UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                             Case No. 8:11-bk-22675-MGW
                                                                   Chapter 7
John Dargon Stanton, III,

      Debtor.
_____/

Larry Hyman,                                                       Adv. No. 8:13-ap-00053-MGW
as Chapter 7 Trustee,

      Plaintiff,

v.

United States of America, et al.,

      Defendants.
_____/

**MEMORANDUM OPINION AND**
**ORDER ON SUMMARY JUDGMENT MOTIONS**

      The Debtor's ex-wife received two cars from the Debtor under a marital settlement agreement. Although the Debtor's ex-wife took—and retained—possession of the cars, which were owned by the Debtor's company, she never actually obtained a certificate of title for them. The United States government now claims a tax lien on the cars. This Court must decide whether a tax lien on the cars is superior to the ownership interest the ex-wife claims in them.

      Under section 319.22, Florida Statutes, the Court cannot recognize any interest in a car unless the person claiming the interest has a certificate of title. Here, the Debtor's ex-wife does not have title to the cars. So she does not have any legally enforceable interest in them. But even if she did, her interest would be inferior to the United States' tax lien, which was recorded months before the marital settlement agreement between the Debtor and his ex-wife.

Accordingly, the United States has a superior interest in the cars transferred to the Debtor's ex-wife.

## Background

The Debtor is the sole shareholder of a company called Escape Velocity of Tampa Bay, Inc.[1] On November 3, 2006, Escape Velocity wired funds to another company called Victoria Carriages, Inc., and Victoria Carriages used those funds to buy a 2005 Mercedes Maybach.[2] Ten days later, Victoria carriages transferred title to the Maybach to Escape Velocity.[3] The same thing happened in 2008 with a Hummer H3. Escape Velocity wired funds to Victoria Carriages, Victoria Carriages purchased the Hummer using the funds from Escape Velocity, and shortly afterwards, Victoria Carriages transferred title to the Hummer to Escape Velocity.[4] As of June 2008, Escape Velocity had title to—and possession of—the Maybach and the Hummer.

However, Susan Stanton (the Debtor's ex-wife) says she became the "owner" of the Maybach two months earlier.[5] According to Stanton, a May 28, 2008 divorce financial agreement between the Debtor and her gave her the sole ownership interest in the Maybach.[6] She claims she entered into a similar oral agreement with the Debtor in June 2008 with respect to the Hummer.[7] Stanton says she was given sole ownership of the cars in exchange for martial funds

---

[1] *Affidavit of Susan Stanton*, Adv. Doc. No. 62 at ¶ 4.

[2] *Id.* at ¶ 7.

[3] *Id.* at ¶ 8.

[4] *Id. at* ¶¶ 9 & 12.

[5] *Id.* at ¶ 10.

[6] *Id.*

[7] *Id.* at 11.

the Debtor used to invest in penny-stock companies.[8] When Stanton moved from Florida to

California in June 2008, she says she took the Maybach and Hummer with her.[9]

On July 19, 2011, the parties' divorce was made final, and under the parties' marital

settlement agreement, which is incorporated into the final divorce decree, Stanton was entitled to

retain the cars she was driving (i.e., the Maybach and the Hummer).[10] The parties' marital

settlement agreement, by its terms, does not expressly obligate the Debtor to transfer title to the

cars to Stanton, although it does provide that the Debtor was responsible for any expense

incurred transferring title to the cars to Stanton's name.[11] For one reason or another, however, the

Debtor never transferred title to the Maybach and Hummer to Stanton (despite apparent requests

by Stanton that he do so).

All of that would have been fairly unremarkable were it not for what happened next.

Almost one year after the parties' divorce was finalized, the FBI seized the cars. Walter

Holmich, the principal of Victoria Carriages, apparently was indicted for—and pleaded guilty

to—four counts of wire fraud. Holmich initially agreed to forfeit the cars. The federal

government later realized that neither Holmich nor Victoria Carriages had any interest in the

cars. But that was not the end of the story. It turns out that on May 16, 2011—two months before

the parties' divorce was finalized—the IRS assessed $1.5 million in unpaid taxes against Escape

Velocity. The IRS then recorded its tax lien (for the $1.5 million in unpaid taxes) on July 13,

2011—less than a week before the parties' divorce was finalized. So the United States—on

behalf of the IRS—sought to levy on the cars to satisfy its tax lien.

---

[8] *Id.*

[9] *Id.* at ¶¶ 13 & 14.

[10] Adv. Doc. No. 68-1 at § H(6)(b); Adv. Doc. No. 68-2 at 2.

[11] *Id.*

The Court must now sort out the parties' competing interests in the cars. The Chapter 7 Trustee initially filed this adversary proceeding seeking a declaration that the cars were property of the estate.[12] According to the Trustee, the Debtor was Escape Velocity's alter ego, and the cars were titled in Escape Velocity's name. So the Trustee contended the cars belonged to the estate as a matter of law.[13] The United States agrees that Escape Velocity is the Debtor's alter ego.[14] But it says that does not change the fact that Escape Velocity—not the Debtor—owes the unpaid taxes and that the United States has a perfected tax lien and that, as a consequence, its interest in the cars is superior to the Trustee's as a matter of law.[15] Stanton says she is entitled to the cars as a matter of law under the terms of her marital settlement agreement with the Debtor.[16] In the end, the fight is really between the United States and Stanton because the Trustee has conceded the United States' interest in the cars is superior to the bankruptcy estate's interest.

## Conclusions of Law[17]

At the outset, it does not appear that Stanton has any cognizable claim. It is true that she had possession of the cars at the time they were seized. It is likewise true that under Stanton's marital settlement agreement with the Debtor, she was to retain any cars that she had possession of (i.e., the Maybach and the Hummer). And Stanton claims—and the Court will assume for purposes of summary judgment—that the Debtor agreed to title the cars in her name when he

---

[12] Adv. Doc. No. 1.

[13] Adv. Doc. No. 41.

[14] Adv. Doc. No. 47 at 3.

[15] *Id.* at 2-4; Adv. Doc. No. 63.

[16] Adv. Doc. No. 68.

[17] The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) & (O).

gave them to her in 2008. The problem is that there is no dispute that the cars are not actually titled in Stanton's name.

And under section 319.22, Florida Statutes, a person cannot claim an ownership interest in a car unless they have title to it:

> No court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of [chapter 319].[18]

In order to overcome this obstacle, Stanton contends there is an equitable exception to section 319.22, Florida Statutes.[19] The cases relied on by Stanton to support an equitable exception to section 319.22, however, are distinguishable from this case.

All of those cases are "entrustment" cases.[20] The "entrustment" doctrine—first recognized in *Motor Credit Corp. v. Woolverton*—creates an equitable exception to section 319.22 where the original titleholder entrusts a vehicle to a dealer who has express or implied authority to sell it, the dealer sells the car to a third party, but the innocent third party does not obtain title to the car at the time of purchase.[21] This is not an entrustment case.

Accepting Stanton's version of the facts as true (and drawing all inferences in her favor), the Debtor transferred the cars to Stanton in 2008 in exchange for marital funds that he had invested in penny stocks, but neither the Debtor nor Stanton made sure to transfer title to Stanton. Stanton obviously is not a dealer, nor were the cars entrusted in her to resell to a third

---

[18] § 319.22(1), Fla. Stat.

[19] Adv. Doc. No. 68 at 10-13.

[20] *Id.* (citing *Motor Credit Corp. v. Woolverton*, 99 So. 2d 286 (Fla. 1957); *Glass v. Cont'l Guar. Corp.*, 86 So. 876 (Fla. 1921); *Greyhound Rent-A-Car, Inc.*, 298 So. 2d 345 (Fla. 1974)).

[21] *In re Orange Rose, LLC*, 446 B.R. 543, 546-47 (Bankr. M.D. Fla. 2011).

party. This case is analogous to In re Orange Rose, LLC[22], where this Court held that the "entrustment" doctrine did not apply where the Debtor purchased thirty-seven mobile homes but failed to submit the bills of sale and transfers of title to the Department of Motor Vehicles.

Stanton contends *Orange Rose* is distinguishable for two reasons. First, she says unlike the debtor in Orange Rose, she owns the cars at issue in this case. She claims the Debtor transferred the cars to her under the parties' marital settlement agreement. Second, she claims she is a bona fide purchaser. According to the Debtor, the cars were consideration for the marital funds the Debtor used to purchase penny stocks. Neither of those arguments has merit.

For starters, Stanton's claim that she owns the car begs the question.[23] The whole point of the "entrustment" doctrine is to allow a person who does not hold title to a car to claim an ownership interest in it. So how can a person claim entitlement under the "entrustment" doctrine by claiming to own the car in question? Moreover, there was no suggestion that the debtor in *Orange Rose* was not a bona fide purchaser as well.[24]

Even assuming Stanton had an interest in the cars, her interest still would not have priority over the United States' interest in them. As the United States points out, the United States Supreme Court has recognized that the priority of federal tax liens is governed by the common law rule of "first in time, first in right."[25] Here, the United States recorded its tax lien two months before Stanton entered into the marital settlement agreement with the Debtor; it also recorded notice of that tax lien one week before she entered into the marital settlement

---

[22] *Id.* at 544-45.

[23] The phrase "begging the question" does not, as some believe, mean "inviting the obvious question." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 105 (3d ed. 2011). Instead, it means to "base a conclusion on an assumption that is as much in need of proof or demonstration as the conclusion itself. *Id.*

[24] *In re Orange Rose*, 446 B.R. at 544-45.

[25] Adv. Doc. No. 63 at 8 (citing *United States v. New Britain*, 347 U.S. 81, 85-86 (1954)).

agreement. It is true that Stanton could have priority over the tax lien under the Tax Code if she was a bona fide purchaser.[26]

But Stanton cannot qualify as a "purchaser." Under the Tax Code, a person is a purchaser of a motor vehicle if they gave consideration in money or money's worth for an interest that is valid under local law against subsequent purchasers without notice.[27] Here, Stanton cannot satisfy either requirement for being a purchaser—i.e., she did not give consideration, nor did she acquire an interest that is enforceable against subsequent purchasers without notice.

To begin with, a division of property under a marital settlement agreement—which is the consideration Stanton claims she gave—cannot qualify as consideration under the Treasury Regulations.[28] And Stanton does not provide any other plausible consideration. So Stanton is foreclosed from being a "purchaser" for that reason alone. On top of that, Stanton—as pointed out above—never obtained title to the cars, so her interest (if any) is not enforceable against subsequent purchasers without notice.

### Conclusion

In the end, Stanton is unable to demonstrate that she has an interest in the cars because she does not hold title to them. But even if she did, her interest is still inferior to the United States' interest in the cars as a matter of law. Accordingly, the Court will enter summary judgment in favor of the United States and against the Trustee and Stanton.

Accordingly, it is

---

[26] 26 U.S.C. § 6323(b)(2).

[27] 26 U.S.C. § 6323(h)(6).

[28] Treas. Reg. § 301.6323(h)-1(a)(3); *Simpson v. United States*, 1989 WL 73212, at *8 (M.D. Fla. Apr. 6, 1986).

**ORDERED**:

1.      The United States' summary motion[29] is GRANTED.

2.      The motions for summary judgment filed by the Trustee[30] and Stanton[31] are

DENIED.

      **DONE** and **ORDERED** in Chambers at Tampa, Florida, on January 22, 2014 _____.

Michael G. Williamson
United States Bankruptcy Judge


Attorney John M. Bilheimer is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**John M. Bilheimer, Esq.**
*Counsel for the United States of America*

**Herbert R. Donica, Esq.**
*Counsel for Trustee*

**Joryn Jenkins, Esq.**
**Joryn Jenkins & Associates**
*Counsel for Susan Stanton*

---

[29] Adv. Doc. No. 63.

[30] Adv. Doc. No. 41.

[31] Adv. Doc. No. 68.